2012 Ark. App. 455

Travis COTTON, Appellant

v.

ARKANSAS DEP'T OF HUMAN SERVICES and Minor Child, Appellees.

No. CA 12–250.

Court of Appeals of Arkansas.

Aug. 29, 2012.

Deborah R. Sallings, Arkansas Public Defender Comm'n, for Appellant.

Tabitha Baertels McNulty, Office of Chief Counsel, for Appellee.

Tjuana Cynese Byrd, attorney ad litem for minor children.

WAYMOND M. BROWN, Judge.

This appeal arises from the termination of appellant Travis Cotton's parental rights as to his daughter, B.C. (DOB 10/28/08). Appellant's attorney filed a motion to withdraw as counsel and a no-merit brief in accordance with *Linker–Flores v. Ark. Dep't of Human Servs.*[1] and Arkansas Supreme Court Rule 6–9(i). Appellant filed pro se points, but failed to make any legal argument or cite to any authority. We find no meritorious grounds for an appeal, and therefore affirm the circuit court and grant counsel's motion to withdraw.

---

1. 359 Ark. 131, 194 S.W.3d 739 (2004).

## Background

B.C. was taken into emergency custody by the Arkansas Department of Human Services (DHS) on June 2, 2010, after she was found naked and wandering half a mile from her home. She was one-and-a-half years old at the time and had been left in the care of her grandparents by her mother, Nicole Pierce. When the police returned B.C. to the home, the grandparents were found to be intoxicated and were arrested for child endangerment. Ms. Pierce's other child, M.C. (DOB 5/4/10) was also taken into custody at that time. DHS filed a petition for emergency custody of both children on June 4, 2010, alleging inadequate supervision by Pierce. The petition was granted that day. The affidavit attached to the emergency-custody petition reflected that, at the time the children were removed, it was believed that appellant was the biological father of both. The affidavit also indicated that there was an open DHS case with the family involving substance abuse and inadequate supervision, and that there had been two 2009 reports involving the same allegations, both of which were found to be true. Both Pierce's and appellant's addresses were listed on the affidavit, and appellant was listed as a defendant in the emergency-custody petition.

An order of probable cause was entered after a hearing on June 8, 2010, at which the parties stipulated to probable cause for continuing DHS custody. The court set the case goal as reunification with Pierce, and both parents were ordered to maintain safe and stable housing; maintain stable employment and income sufficient to support B.C. and M.C.; complete parenting classes; attend all scheduled visitation; submit to random drug screens; keep DHS informed of any address or telephone number changes; cooperate with DHS; and undergo drug-and-alcohol assessments. The court also ordered appellant to establish paternity.

The circuit court adjudicated B.C. and M.C. dependent-neglected after a hearing on July 27, 2010, kept reunification with Pierce as the goal of the case, and ordered DHS to continue providing services to the family. Appellant established paternity of B.C. on August 20, 2010, at which time DHS offered him weekly visitation. On November 30, 2010, a review hearing was held. The circuit court found that both appellant and Pierce had failed to comply with the case plan or the orders of the court in that neither of them had stable living arrangements or jobs, both had refused drug screens or failed to appear for drug screens, neither had completed parenting classes, and Pierce had left drug treatment without successful completion.

On May 25, 2011, a permanency-planning hearing was held and the circuit court found that changing the goal of the case to termination of parental rights (TPR) and adoption was in the best interests of B.C. and M.C. The court gave DHS permission to file a petition for TPR as to the rights of appellant, Pierce, and Timothy Knight, who had been determined to be M.C.'s biological father. The court found that DHS had provided appropriate services but that both appellant and Pierce had continued to be noncompliant with the case plan or the orders of the court.

On July 7, 2011, DHS filed a TPR petition as to both children and all three parents (appellant, Pierce, and Knight), alleging that TPR was called for under Ark. Code Ann. §§ 9–27–341(b)(3)(B)(i)(a), 9–27–341(b)(3)(B)(ii)(a), and 9–27–341(b)(3)(B)(vii)(a). Appellant's TPR hearing was held on November 23, 2011.[2] At

---

2. Nicole Pierce's parental rights as to both B.C. and M.C. were terminated after a hearing on September 12, 2011.

the opening of the hearing, appellant's counsel requested a continuance because appellant was in rehab "getting his life together" and wanted more time, and also because counsel had been appointed to the case two months prior and did not have adequate time to develop a defense. The circuit court denied the motion for continuance and proceeded with the hearing.

The only witness at the TPR hearing was Sonji Cline, the family's DHS caseworker. Cline described her efforts to work with appellant, but cited his frequent address changes and transportation issues as an obstacle to services. She also testified that DHS made three referrals for drug-and-alcohol assessments, but appellant missed all three of the assessments. Cline said that when appellant established paternity of B.C., DHS offered weekly visitation, and while appellant did exhibit a bond with B.C., she did not know he was her father. The DHS report entered into evidence showed that appellant attended only twenty-one of the forty-eight visits scheduled since August 2010. Cline also testified that appellant failed to complete court-ordered parenting classes until entering rehab on September 26, 2011; never maintained a stable address; and on August 19, 2011, was arrested and jailed for second-degree battery, fleeing on foot, possession of a controlled substance, tampering with evidence, disorderly conduct, and resisting arrest.

Appellant offered no evidence to show that he had a job or any means to support himself and B.C., and Cline testified that appellant would not complete rehab until October 2012, almost a full year from the TPR hearing (and over two years after

B.C. was removed from her mother's custody). Cline testified that appellant did not make a diligent effort toward reunification until he was incarcerated and facing criminal charges, and although the rehab services did offer an opportunity for him to change, DHS recommended TPR.

Cline testified that B.C. and M.C. had stayed in the same foster home since September 2010, that the children had not exhibited any behavioral issues or other problems, and that they had no developmental, medical, or other issues that would prevent them from being adopted. Cline testified as to factors in favor of adoption, such as the children having been together and in the same foster home since September 2011, and opined that adoption was likely to occur, noting that the children's present foster home was an adoptive one.

On January 3, 2012, the circuit court entered an order terminating appellant's parental rights as to B.C. A timely notice of appeal was filed on January 20, 2012. Appellant's attorney filed a motion to withdraw as counsel and no-merit brief on April 25, 2012. Appellant filed pro se points for reversal on May 15, 2012.

*Standard of Review*

This court reviews TPR cases de novo.[3] DHS must prove allegations by clear and convincing evidence,[4] or proof that will produce in the fact-finder a firm conviction as to the allegation to be established.[5] We will not reverse unless the circuit court's findings are clearly erroneous, giving due regard to the court's opportunity to judge the credibility of the witnesses.[6] A finding is clearly erroneous when, although there is evidence to sup-

**3.** *Hune v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 543, 2010 WL 2612681.

**4.** *Causer v. Ark. Dep't of Human Servs.*, 93 Ark.App. 483, 220 S.W.3d 270 (2005).

**5.** *Williams v. Ark. Dep't of Human Servs.*, 99 Ark.App. 95, 257 S.W.3d 574 (2007).

**6.** *Moiser v. Ark. Dep't of Human Servs.*, 95 Ark.App. 32, 233 S.W.3d 172 (2006).

port it, the reviewing court is left on the entire evidence with a definite and firm conviction that a mistake has been made.[7] Parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[8]

### Discussion

#### I. *Appellant's Pro Se Points*

■ Appellant filed a letter setting forth pro se points for reversal on May 15, 2012. In the letter, appellant argues that he has accepted Christ as his personal savior, feels sorrow about B.C. and his history as "less than a responsible parent," and asks this court to keep the case open until he can prove that he is a changed person who can responsibly parent B.C. Perhaps appellant is sincere, but his request does not present any legal argument or cite any legal authority. It is well established that when an appellant does not cite authority or make a convincing legal argument, and where it is not apparent without further research that the point is well taken, we will affirm.[9] Nevertheless, because appellant's counsel has filed a no-merit brief and motion to withdraw, we undertake a full review of the record, regardless of whether or not the appellant identifies the trial court's errors.[10] Therefore, although appellant's pro se points raise no meritorious grounds for an appeal, we proceed to an examination of all adverse rulings against him.

### II. *Adverse Rulings*

#### A. Denial of Motion for Continuance

■ A motion for continuance shall be granted only upon a showing of good cause.[11] We will not reverse the denial of a motion for continuance absent an abuse of discretion that amounts to a denial of justice.[12] A circuit court abuses its discretion when it acts improvidently and without due consideration.[13]

■ We agree with appellant's counsel that no abuse of discretion occurred here. The TPR hearing had been set since July 2011 and appellant's attorney was appointed two months prior to the hearing, yet counsel waited until the day of the hearing to make an oral motion for a continuance, based partly on lack of preparedness. A movant's failure to exercise diligence is a factor to be considered by the circuit court in deciding whether or not to grant a continuance.[14] In fact, a lack of diligence alone is sufficient cause to deny a continuance.[15] Additionally, an appellant must show prejudice from the denial of the continuance.[16]

Although appellant's counsel told the court that she had only a limited time to prepare a defense, she did not file an affidavit or otherwise inform the court how additional time would have helped appellant, such as witnesses that might have been called, what those witnesses might

7. *Blanchard v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 215, 395 S.W.3d 405.

8. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997).

9. *J&J Bonding, Inc. v. State*, 330 Ark. 599, 955 S.W.2d 516 (1997).

10. *Sweeney v. State*, 69 Ark.App. 7, 9 S.W.3d 529 (2000).

11. *Butler v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 570, 2010 WL 3422456.

12. *Smith v. Ark. Dep't of Human Servs.*, 93 Ark.App. 395, 219 S.W.3d 705 (2005).

13. *Henderson v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 481, 2010 WL 2186438.

14. *See Butler, supra; Smith, supra.*

15. *Davis v. State*, 345 Ark. 161, 44 S.W.3d 726 (2001).

16. *Green v. State*, 354 Ark. 210, 118 S.W.3d 563 (2003).

have said, or how their testimony would have affected the hearing. As such, there is no basis for this court to find that appellant was prejudiced by the circuit court's denial of his motion for continuance. In light of this and appellant's lack of diligence, there is no meritorious argument to reverse the circuit court's denial of appellant's motion for a continuance.

**B. Admission of DHS Court Report**

During the TPR hearing, appellant objected to the introduction by DHS of the court report prepared for the case, on the ground that the report contained inadmissible hearsay. The circuit court admitted the report but said that it would not consider any hearsay contained in it.

Evidentiary rulings by a circuit court are reviewed for abuse of discretion.[17] Sonji Cline, the caseworker who prepared the report, testified at the TPR hearing and was cross-examined by appellant's attorney. Cline essentially testified to all of the contents of the report, so at most, the report was cumulative. However, because the contents of the report were included in Cline's testimony, appellant would not be able to demonstrate prejudice from the admission of the report, and we will not reverse without such a showing: prejudice is not presumed.[18] Thus, the admission of the report does not give rise to any meritorious argument for reversal.

**C. Denial of Motion for Directed Verdict and Grant of TPR**

After Sonji Cline testified, DHS rested and appellant's counsel moved for a directed verdict on the grounds that no

evidence of potential harm to B.C. had been adduced. The court denied the motion, finding that B.C. could not be safely placed in appellant's custody because he was in an inpatient rehabilitation facility and had criminal charges pending against him. The record reveals no non-frivolous argument that the evidence presented was insufficient to support the circuit court's decision to grant TPR.

The purpose of TPR is to provide permanency in the child's life where their return to the family is contrary to their health, safety, or welfare and it appears that return cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[19] A court may order TPR if it finds there is an appropriate permanent placement plan for the child,[20] and there is clear and convincing evidence that TPR is in the child's best interest, taking into consideration the likelihood of adoption and the potential harm to the child's health and safety if she were returned to the parent.[21] There must also be clear and convincing evidence to support at least one ground set forth at Arkansas Code Annotated section 9–27–341(b)(3)(B).

Clear and convincing evidence of adoptability is not required; rather, the circuit court need only to consider the likelihood that the child will be adopted.[22] Cline's testimony that B.C. was adoptable was not challenged by appellant. B.C. was young, had no special needs or behavioral problems, and had been living with a pre-adoptive family since September 2010. Consequently, there is no meritorious chal-

17. *Sparkman v. Ark. Dep't of Human Servs.*, 96 Ark.App. 363, 242 S.W.3d 282 (2006).

18. *Cheney v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 209, 396 S.W.3d 272.

19. Ark.Code Ann. § 9–27–341(a)(3).

20. Ark.Code Ann. § 9–27–341(b)(1)(A).

21. Ark.Code Ann. § 9–27–341(b)(3)(A).

22. *Dority v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 295, 2011 WL 1495988.

lenge to the circuit court's finding of adoptability.

 Likewise, there are no non-frivolous arguments to reverse the circuit court's finding that |₁₀B.C. faced potential harm if she were placed in appellant's custody. In assessing the potential-harm factor, a court is not required to find that any actual harm will result or to identify a particular harm; instead, the harm analysis is to be conducted in broad terms.[23] Here, the court focused on the undisputed facts that during the fifteen months the case was pending, appellant had never obtained stable housing or employment, did not appear for several scheduled drug assessments, and began cooperating with DHS only after he had been arrested and had entered a year-long residential drug-rehabilitation facility, well after the May 25, 2011 permanency-planning hearing. A parent's lack of stable housing or employment can demonstrate potential harm to a child,[24] as can a parent's refusal to obtain drug assessments when, as in this case, there is evidence that drug use may be an issue.[25]

Moreover, appellant had just begun the residential drug-rehabilitation program at the time the TPR hearing was held. Even assuming he would complete the program successfully, B.C., who had already been in foster care for fifteen months, would have to remain there for another year. This,

and evidence that appellant had only started to work on resolving his issues long after the permanency-planning hearing (and not until he faced criminal charges), support the circuit court's finding that B.C. could not be placed in appellant's custody within a reasonable period of time as viewed from her perspective.[26]

 |₁₁As for statutory grounds, in its order, the circuit court stated that it was basing its grant of TPR on Ark.Code Ann. § 9–27–341(b)(3)(B)(i) (*a*), which authorizes TPR when

a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

Had this been the only statutory ground alleged in the TPR petition, there would be a meritorious argument that the evidence was insufficient to support TPR, because B.C. was not removed from appellant's custody.[27] However, because the TPR petition alleged an additional statutory ground for TPR—the "subsequent other factors" ground at Ark.Code Ann. § 9–27–341(b)(3)(B)(vii) (*a*)[28]—this court may affirm if there was sufficient evidence of

---

23. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722.

24. *See, e.g., Hall v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 245, 413 S.W.3d 542.

25. *See Landis–Maynard v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 673, 386 S.W.3d 641; *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark.App. 255, 148 S.W.3d 780 (2004).

26. *See* Ark.Code Ann. § 9–27–341(a)(4)(A); *Camarillo–Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005).

27. *See Lewis v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 154, 391 S.W.3d 695.

28. This provision allows TPR when "subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose which demonstrate that return of the juvenile to the family home is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances which prevent return of the juvenile to the family home."

that ground in the record.[29] Here, the evidence of appellant's lack of compliance with the case plan and court orders, including his failure to submit to drug screens and testing positive for drugs,[30] as well as his failure to obtain stable housing, employment, or income, supports a grant of TPR under the "subsequent other factors" ground. Accordingly, there is no meritorious argument that there was insufficient evidence to terminate appellant's parental rights.

In conclusion, we find no non-frivolous grounds for an appeal in this case, and therefore affirm the circuit court and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

WYNNE and GLOVER, JJ., agree.

---

**29.** *See Allen v. Ark. Dep't of Human Servs.,* 2011 Ark. App. 288, 384 S.W.3d 7.

**30.** Appellant refused drug screens in June, August, November, and December 2010; tested positive for THC and benzodiazepines in January 2011; and tested positive for THC in February 2011.