

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-13-545

|  |  |
|---|---|
| EMILY DAWN SMITHEE and TERRENCE SMITHEE APPELLANTS V. ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD APPELLEES | Opinion Delivered November 6, 2013 APPEAL FROM THE CLAY COUNTY CIRCUIT COURT, WESTERN DISTRICT [No. JV-12-17] HONORABLE CINDY THYER, JUDGE AFFIRMED |

### LARRY D. VAUGHT, Judge

Appellants Emily and Terrence Smithee appeal the order entered by the Circuit Court of Clay County terminating the parental rights to their son J.S. (DOB 8-8-12). On appeal, the Smithees argue that (1) the trial court abused its discretion in admitting evidence of their prior case with appellee Arkansas Department of Human Services (DHS) and siblings of J.S., and (2) the trial court clearly erred in finding grounds supporting termination. We affirm.

J.S. was born two months premature and spent his first few weeks in the hospital. On September 10, 2012, DHS received a hotline report that the Smithee home was unclean, that Emily was not taking her bipolar medications, and that two of J.S.'s siblings were in DHS care. An investigation revealed that Emily went into premature labor with J.S. after riding rides at the fair; that she was insisting on breast feeding J.S. despite her breast milk being contaminated with klebsiella[1] and staph; and that she was not compliant with the case involving her two other

---

[1]Evidence revealed that klebsiella is an organism found in stool.

SLIP OPINION

children. Based on this information, on October 3, 2012, DHS exercised an emergency hold on J.S. An ex parte order for emergency custody was entered October 8, 2012, and a probable-cause order was entered October 10, 2012.

Following an adjudication hearing, the trial court entered an order on February 8, 2013, in which it adjudicated J.S. dependent-neglected because: Emily's breast milk was contaminated with klebsiella; Emily insisted on breast feeding J.S.; the Smithees had emotional and behavioral issues and were not receptive to counseling; J.S. had bonding issues with his parents and was refusing to feed, which caused a physician to seek a medical order requiring the primary caregiver to feed the baby; the Smithees delayed testing for staph for months, which resulted in them not visiting J.S. during that period of time; Emily brought a "doll" bottle to the hospital to feed J.S., which demonstrated her lack of ability to parent; the siblings of J.S. were previously removed from the home; and hygiene continued to be an issue. The trial court also concluded that the Smithees had subjected J.S. to aggravated circumstances and terminated reunification services to the Smithees.

DHS filed a petition for termination of parental rights on February 13, 2013. In the petition, DHS alleged the following statutory grounds for termination: (1) other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that return of the juvenile to the custody of the parents was contrary to the juvenile's health, safety, or welfare, and that, despite the offer of appropriate family services, the parents manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parents' circumstances that prevented the return of the juvenile to the parents,

and (2) the parents subjected the juvenile to aggravated circumstances and there was little likelihood that services to the family would result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*) and (b)(3)(B)(ix)(*a*)(*3*)(*A*), (*B*)(*i*) (Supp. 2011).

At the termination hearing, DHS caseworker Hailey Allison testified that she had been working with the Smithees for four years[2] and that only recently had the Smithees been complying with court orders.[3] She said that the Smithees were ordered to have testing to confirm the absence of staph before they were permitted to visit J.S.; however, they were not tested until March 2013. According to Allison, the testing delay resulted in the Smithees not visiting J.S. for five months. Allison added that J.S. had not bonded with his parents. Allison stated that the Smithees were referred for counseling but in the last two months they attended only four visits and missed several others. Allison stated that DHS was requesting that the Smithees' parental rights to J.S. be terminated and the goal of the case be changed to adoption. She stated that the family currently caring for J.S. (and his siblings) would continue to care for him; alternatively, she said that there was a great likelihood that J.S. would be adopted based on his young age.

Emily testified that the five-month delay in getting tested for staph was due to the expense of the testing. She admitted that she missed counseling appointments because Terrence had to work and she overslept. She claimed that she was bonding with J.S., despite not seeing

---

[2]Allison began working with the Smithees and J.S.'s two older siblings in 2009. The case began as a protective-services case; however, the siblings were removed from the Smithees' custody in June 2011, adjudicated dependent-neglected on July 15, 2011, and thereafter placed into foster care.

[3]Allison testified that the Smithees had new housing on the campus of Arkansas State University and that their drug screens were negative.

him for five months. Terrence also testified, stating that he missed counseling sessions because of his class and full-time-work schedules. In an order filed on April 12, 2013, the trial court granted DHS's petition for termination of the Smithees' parental rights. This appeal followed.

The Smithees' first point on appeal is that the trial court abused its discretion in admitting evidence of DHS's prior case that involved siblings of J.S. During the testimony of Allison, she was asked why she became involved with the Smithee family in 2009. Counsel for the Smithees objected, arguing that what happened in the prior case was not relevant in J.S.'s case. The trial court overruled the objection. On appeal, the Smithees' entire argument on this point is that the ruling "was unfairly prejudicial to their case." We cannot reach the merits of this single-sentence argument because it is not developed any further, and the failure to develop an argument precludes review on appeal. *Hall v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 245, at 11, ___ S.W.3d ____, ___; *Cotton v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 455, at 6, ___ S.W.3d ___, ___ (holding that it is well established that when an appellant does not cite authority or make a convincing legal argument, and where it is not apparent without further research that the point is well taken, we will affirm).

Assuming the Smithees' argument was properly developed, our standard of review dictates that we cannot reverse a trial court's evidentiary ruling absent an abuse of discretion. *Tadlock v. Moncus*, 2013 Ark. App. 363, at 7, ___ S.W.3d ___, ___. Further, we will not reverse without a showing of prejudice—prejudice is not presumed. *Cotton*, 2012 Ark. App. 455, at 8, ___ S.W.3d at ___. The Smithees have failed to demonstrate how evidence of the prior case "unfairly prejudiced" them. Moreover, the same evidence was contained in the adjudication

SLIP OPINION

order, the psychological evaluations, and the petition for termination; all of which were admitted into evidence at the termination hearing without objection. Therefore, we affirm on this point.

The Smithees' second challenge is to the trial court's termination decision. A trial court may terminate parental rights if the court finds by clear and convincing evidence that termination is in the child's best interest, considering the likelihood that the child will be adopted and the potential harm the child would suffer if returned to the parent's custody, and finds by clear and convincing evidence that at least one statutory ground for termination exists. *Nichols v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 504, at 6, ___ S.W.3d ___, ___. We review termination-of-parental-rights cases de novo. *Id.,* ___ S.W.3d at ___. The grounds for termination of parental rights must be proved by clear and convincing evidence. *Id.*, ___ S.W.3d at ___. When the burden of proving a disputed fact is by clear and convincing evidence, the question on appeal is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.*, ___ S.W.3d at ___. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*, ___ S.W.3d at ___.

The Smithees argue that the termination order should be reversed because the trial court clearly erred in finding that returning J.S. to their custody would endanger his health, safety, and welfare, which is required for the grounds set forth in Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(*a*). However, the Smithees fail to challenge the trial court's alternative ground for termination—aggravated circumstances—as set forth in Arkansas Code Annotated section

9-27-341(b)(3)(B)(ix)(*a*)(*3*)(*A*) &(*B*)(*i*). This latter ground does not require that DHS prove that returning J.S. to the Smithees' custody would endanger his health, safety, and welfare. This latter ground was both pleaded by DHS in its petition to terminate and relied on by the trial court in its termination order. Further, in its adjudication order, the trial court found that J.S. had been subjected to aggravated circumstances, and the parents failed to timely appeal this ruling. Thus, there is clear and convincing evidence to support this alternative ground for termination, and only one ground for termination must be proved to support the trial court's decision. *Draper v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 112, at 15, 389 S.W.3d 58, 66. Accordingly, we hold that the trial court did not clearly err in terminating the Smithees' parental rights to J.S.

Affirmed.

WYNNE and GLOVER, JJ., agree.

*Terry Goodwin Jones*, for appellants.

*Tabitha Baertels McNulty*, DHS Office of Policy; and *Chrestman Group, PLLC*, by: *Keith Chrestman*, for appellees.