DAVID M. GLOVER, Judge
Cakoshia Easter appeals from the termination of her parental rights to her four children-KC1, JC1, JC2, and KC2. She contends the trial court clearly erred in finding termination was in the children's best interest and that statutory grounds were proved to support the termination. We affirm.
DHS took emergency custody of Easter's four children on December 8, 2015, because there was suspected child abuse in connection with the broken leg of one of the children. The accompanying affidavit explained in part that the child stated his father hurt him, and that Easter corrected the child stating that the father had tried to help him. The children were subsequently adjudicated dependent-neglected. The trial court found the explanations concerning the child's broken leg were unsatisfactory. In addition, Easter tested positive for THC. The goal of the case was reunification, but after nineteen months, DHS filed its petition to terminate Easter's rights. Following a hearing, the trial court granted the petition, finding it was in the children's best interest and that DHS had proved three statutory grounds ("failure to remedy," "subsequent factors," and "aggravated circumstances"). The father's *435 parental rights were also terminated, but he is not involved in this appeal.
At the termination hearing, Quiana McGhee, the family-service-worker supervisor, testified she had been working on this case since March 2016; the case was opened when the children were removed in December 2015; one of the children had an unexplained broken leg ; and there had been an earlier open protective-services case. She testified Easter tested positive for marijuana on January 25, 2017, after starting a trial placement with the children on January 6. She stated that earlier one of Easter's children had tested positive for illegal substances at birth on March 1, 2015, and that one of the children had four large scratches on his face on February 12, 2015. Easter's case plan included a psychological evaluation, counseling, a drug assessment, obtaining employment and suitable housing, and parenting classes. McGhee described Easter's performance under the case plan as "up and down"; initially, she had done everything she needed to do; but later she had used drugs, even though she denied doing so; she lost one job but got another; and lost her housing and was living with relatives. She explained Easter had not completed her treatment and had tested positive for drugs, i.e., methamphetamine, again in March; and she had continued to test positive for alcohol even though she had been told not to be around or to use drugs or alcohol.
McGhee stated Easter had attended inpatient treatment; Easter started after care but did not complete it; and she had not adhered to mental-health counseling. McGhee could think of no other services that could be offered to achieve reunification, and she could not say Easter had made significant measurable progress under the case plan or worked diligently toward reunification. She recommended termination.
Loren Beck, counselor for outpatient services with Southwest Arkansas Counseling Mental Health Center, testified as an expert in substance-abuse counseling and treatment. She stated she was familiar with Easter's chart and the clinical services provided to her but not with Easter. She explained that Easter's assessment found she was not capable of maintaining abstinence on her own; she would need further treatment after her inpatient stay; she did not complete treatment; abstinence was the focus; and alcohol was considered a drug. She testified it would be a concern to her in treating a patient if they stopped testing positive for street drugs but started testing positive for alcohol because it was a replacement, demonstrating poor coping mechanisms. She stated it was never acceptable to her agency for an addict to use any mind-altering substance, but acknowledged moderation-management-therapeutic techniques exist and none of those techniques were used on Easter.
Cakoshia Easter testified she was currently employed at Burger King and explained she had stopped working at Tyson in January because of a broken finger. She acknowledged testing positive for THC in January 2017, but denied smoking or ingesting it. She stated she was riding in a car with others, heading to Tyson for a meeting, and she got a second-hand high. She acknowledged telling the court that she was still employed at Tyson at that time, but that she was actually going back for a meeting to see if she could get her job back-she thought she was still employed. She denied using methamphetamine and testified someone might have slipped it into her drink when she had her first positive alcohol test. She still denied using it even though the lab confirmed methamphetamine. She remembered the *436 court ordering her to refrain from using alcohol, but she acknowledged she continued to use it. She remembered the substance-abuse counselors telling her the importance of not using alcohol, but she still chose to do so.
Easter stated her belief that she had substantially completed the case plan but acknowledged she did not complete the outpatient treatment. She testified: she was living with her grandmother; she sometimes stays with her uncle; she anticipates getting her own home soon; she barely brings home $200, after child-support is taken out; she is on a waiting list for housing aid; she completed parenting classes and the 35-day inpatient treatment at River Ridge; and she visits her children every Monday.
In appeals involving the termination of parental rights, our standard of review is de novo. Johnson v. Arkansas Dep't of Human Servs. , 2018 Ark. App. 221, 547 S.W.3d 489. DHS must prove allegations by clear and convincing evidence, or proof that will produce in the fact finder a firm conviction that the allegation has been established. Cotton v. Arkansas Dep't of Human Servs. , 2012 Ark. App. 455, 422 S.W.3d 130. The appellate inquiry is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. Johnson, supra. We will not reverse unless the trial court's findings are clearly erroneous, giving due regard to the court's opportunity to judge the credibility of the witnesses. Cotton, supra. A finding is clearly erroneous when, although there is evidence to support it, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made. Id. The termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. Johnson, supra. Accordingly, the rights of natural parents are not to be passed over lightly; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. Id.
The termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. Id. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. Id. Only one statutory ground is necessary to terminate parental rights. Id.
The two prongs for making a best-interest determination are the likelihood of adoption and the potential for harm if the children are returned to the parent. Easter does not challenge the trial court's adoptability finding. In challenging the trial court's finding that there was the potential for harm to the children if returned to her, Easter argues that the trial court gave only passing comment to her housing and employment, focusing instead on her alcohol use-which she argues was not sufficiently demonstrated as a problem, i.e., DHS did not sufficiently demonstrate that Easter's alcohol use was a problem for her, her recovery, or her ability to parent.
The trial court found:
Specifically, the Court finds credible the testimony of Quiana McGhee, that, if returned to the parents, the juveniles would likely be subjected to further neglect or abuse. Specifically, Ms. McGhee testified that the father has effectively abandoned the juveniles, by not having had or seeking to have contact with them in nearly a year, and that the *437 mother's actions throughout the case, but especially with the last nine (9) months, cause concern for her capacity to protect the juveniles' health and safety, as well as her capacity to provide for their needs, including material needs and supervision. The Court also notes that the evidence presented this date indicates that the mother tested positive for alcohol on May 22nd and 30th, July 3rd and 26th, and August 7th, 14th, 21st, and 28th. The Court further finds credible the expert testimony of Loren Beck to the claims that: the mother was repeatedly apprised of the importance of abstaining from all mind-altering substances, including alcohol, as part of her substance abuse recovery; that a common pitfall of those in drug treatment and recovery is to substitute one mind-altering substance for another; that use of a substitute mind-altering substance, such as alcohol, is a significant concern for a recovering drug or alcohol abuser; and that the mother's relapses on illegal drugs since completing rehab, and her continued use of alcohol, are indicative that substance abuse is a continuing concern for her. The Court notes that the mother was ordered to follow the recommendations of her aftercare plan, and that she was made well aware of the significant concern for her use of alcohol following her completion of rehab, especially in light of her having twice tested positive for illegal substances this year. The Court also notes that the mother continues to deny having used any illegal substances at all this year, e.g. cannabis and methamphetamines, and the Court does not find her testimony to be credible. The Court notes that the evidence presented this date also indicates that the mother does not have stable housing and only recently began working again. The Court, therefore, finds that the facts of the entire case, including the father's abandonment of the juveniles, and the mother's failure to resolve her substance abuse issues, demonstrate how the juveniles would be at substantial risk of potential harm if returned to the parents, and that continued services to the family are not likely to result in successful reunification.
We find no clear error in the trial court's potential-harm determination. Even though Easter completed an inpatient-drug-treatment program and obtained housing and employment, when she was allowed to have a trial placement of the children in her home, it had to be terminated because she tested positive for THC. In addition, after the trial placement was ended, she tested positive for other illegal drugs, including methamphetamine. Even though she was required to abstain from alcohol as part of her aftercare plan, she tested positive for alcohol. And finally, she ended up losing her job and her house. We are not left with a definite and firm conviction that the trial court made a mistake in finding there was potential for harm if the children were returned to Easter.
As mentioned previously, the trial court found three statutory grounds for termination. Proof of only one statutory ground is sufficient to support a termination. Allen v. Arkansas Dep't of Human Servs. , 2018 Ark. App. 136, 540 S.W.3d 742. We find no clear error with the trial court's determination that DHS satisfactorily proved the existence of statutory grounds for termination.
One of the statutory grounds found by the trial court was "subsequent factors." Ark. Code Ann. § 9-27-341(b)(3)(B)(vii) (Supp. 2017). The "subsequent-factors" ground requires proof that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect *438 that demonstrate placement of the juveniles in the parents' custody is contrary to the juveniles' health, safety, or welfare, and that despite the offer of appropriate family services, the parents have manifested the incapacity or indifference to remedy those subsequent issues or factors, or to rehabilitate the circumstances which prevent placement of the juveniles in the parent custody. Id. As noted in the responsive briefs, a parent's violation of the trial court's orders provides sufficient subsequent-factors to justify the termination of parental rights. See , e.g. , Jones v. Arkansas Department of Human Servs. , 361 Ark. 164, 205 S.W.3d 778 (2005) ; Cotton , 2012 Ark. App. 455, 422 S.W.3d 130.
Here, Easter was ordered not to consume alcohol and illegal drugs. She acknowledged she was aware of those prohibitions, yet she tested positive for both-even during a trial placement with her children. She denied using methamphetamine, explaining "someone might have slipped it into her drink." She acknowledged testing positive for THC, but denied smoking or ingesting it, explaining she rode in a car with others who were smoking it and got a second-hand high. She remembered the court ordering her to refrain from using alcohol and the substance-abuse counselors telling her the importance of not using alcohol, but acknowledged she still chose to do so. We are not left with a definite and firm conviction that the trial court made a mistake in finding that subsequent factors had been proved. Furthermore, Easter's argument that DHS failed to provide appropriate family services, particularly because she was not provided with services that would help her with moderate use of alcohol, was wholly unconvincing.
Although one statutory ground is sufficient, another statutory ground relied upon by the trial court was "aggravated circumstances," which requires proof that there is little likelihood services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3) (Supp. 2017). Easter continued to use alcohol throughout the case, despite receiving inpatient and outpatient services to address those concerns, and she tested positive for THC while her children were with her in a trial home placement. The controlling issue is whether the parent has become a stable, safe parent who is able to care for his or her children. DHS had been involved with Easter for years, and yet she was still exhibiting behavior that showed she could not be a stable, safe parent. We are similarly not left with a definite and firm conviction that the trial court made a mistake in concluding there was no basis for believing additional services would result in a successful reunification.
In conclusion, our de novo review of the evidence in this case convinces us the trial court did not clearly err in finding DHS had proved termination was in the children's best interest and statutory grounds for termination existed.
Affirmed.
Vaught and Brown, JJ., agree.