

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-15-749

VALERIE ROBINSON

APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN
SERVICES AND MINOR CHILDREN

APPELLEES

Opinion Delivered January 27, 2016

APPEAL FROM THE MILLER
COUNTY CIRCUIT COURT
[NO. 46JV-13-125-2]

HONORABLE BRENT HALTOM,
JUDGE

AFFIRMED

## LARRY D. VAUGHT, Judge

Valerie Robinson appeals the Miller County Circuit Court's termination of her parental rights to her two sons, M.R., born January 5, 2009, and B.R., born April 15, 2002. We affirm.

Robinson's two sons were removed from her custody on June 19, 2013, because Robinson tested positive for methamphetamine, there was no food or electricity in the house, the home was in disarray, and Robinson had a sex offender living in the home with the boys. The Arkansas Department of Human Services ("DHS") filed a petition for emergency custody and to have the boys adjudicated dependent-neglected. After a probable-cause hearing on June 26, 2013, the court issued a probable-cause order for the boys to remain in DHS care. On July 17, 2013, the court found the boys to be dependent-neglected. At the hearing, Robinson admitted to having used methamphetamine, keeping a home in disarray with no food or electricity, and having a live-in boyfriend, Jason Dolan, who was a

sex offender.[1] Robinson was ordered to comply with a case plan that included submitting to a psychological evaluation, completing counseling if recommended, submitting to a drug-and-alcohol assessment, successfully completing substance-abuse treatment if recommended, submitting to and passing random drug screens, obtaining safe and stable housing and employment, and maintaining that housing and employment for at least six months.

At a review hearing on October 9, 2013, the court found that Robinson had not complied with the case plan because she had not submitted to a psychological evaluation, completed counseling, submitted to a drug and alcohol assessment, completed substance abuse treatment, completed parenting classes, or submitted to random drug screens. Another review hearing was held on April 9, 2014, at which time the court found that Robinson had complied with the case plan, although she still had not secured stable housing or employment.

The permanency-planning hearing was held on June 4, 2014, and the court found that Robinson was in full compliance and had obtained housing and employment. At this hearing, the court authorized a thirty-day trial placement of the boys with Robinson because she was making progress in working her case plan. The boys were placed in her custody on July 16, 2014, at the fifteen-month review hearing. However, at a routine home visit during the trial placement, Robinson's new boyfriend, Ronnell McDonald, was found hiding in a closet partially clothed. Due to this discovery, DHS filed a motion for emergency change of custody because Robinson had violated the court order authorizing the trial placement,

---

[1] While there are no direct allegations of sexual abuse in this case, the evidence reveals that B.R. told a caseworker that an unidentified man had molested him, that he had told his mother and grandmother, and that they had not believed him.

which prohibited the children from having any contact with McDonald[2] and prohibited Robinson from having nonrelative overnight guests in the home. After a hearing, the boys were returned to foster care and were again found to be dependent-neglected.

At the next review hearing on February 18, 2015, the court found Robinson to be in violation of the case plan because she had been terminated from her job and evicted from her home. On March 18, another permanency-planning hearing was held, and the court found that Robinson had complied with the case plan and court orders. At this time, she had begun receiving SSI disability benefits.[3]

DHS filed a petition to terminate parental rights on April 9, 2015, alleging three statutory grounds for termination pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(i), (vi), (vii) (Supp. 2015): (1) the juveniles had been adjudicated dependent-neglected and had continued to be out of Robinson's custody for twelve months and, despite DHS's meaningful efforts to rehabilitate Robinson and correct the conditions that caused removal, those conditions had not been remedied by Robinson; (2) the court had found the juvenile or a sibling dependent-neglected as a result of neglect or abuse that could endanger the life of the child, sexual abuse, or sexual exploitation, perpetrated by Robinson or the children's other parent or step-parent; and (3) other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that

---

[2] McDonald had previously had his parental rights involuntarily terminated as to several children in California.

[3] The record reflects that Robinson was found to have the following "severe impairments: bipolar I disorder, anxiety disorder, borderline intellectual functioning, borderline personality disorder, dextroscoliosis and migraine headaches." These impairments were found to result in "moderate to extreme difficulties in maintaining social functioning," among other impairments.

placement of the juveniles in Robinson's care was contrary to their health, safety, or welfare, and that despite the offer of appropriate family services, Robinson manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the circumstances that prevented the placement of the juveniles in her custody.

After conducting a termination hearing, the trial court found the existence of statutory grounds (1) and (3) above: failure to remedy and other subsequent factors. The court further found that termination was in the boys' best interest[4] and terminated Robinson's parental rights.[5] Robinson filed a timely notice of appeal.

A trial court's termination of parental rights must be based on factual findings proven by clear and convincing evidence. *Ullom v. Ark. Dep't of Human Servs.*, 67 Ark. App. 77, 992 S.W.2d 813 (1999). We will not reverse a trial court's ruling as to termination unless it is clearly erroneous. *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 43 S.W.3d 196 (2001). Under Arkansas law, in order to terminate parental rights, a trial court must find both that termination would be in the child's best interest and that at least one statutory ground for termination has been established. *Meriweather v. Ark. Dep't of Human Servs.*, 98 Ark. App. 328, 332, 255 S.W.3d 505, 507 (2007).

Robinson's first point on appeal is that the trial court clearly erred in finding that she had failed to remedy the conditions that originally caused the children to be removed. She

---

[4] The testimony revealed that the boys had severe behavioral and emotional problems. There was conflicting testimony as to whether they were adoptable. In its best-interest analysis, the trial court did not specifically find the boys to be currently adoptable; it considered adoptability and found that their best hope for permanency was termination of Robinson's parental rights so that they may recover and become adoptable.

[5] The court also terminated the rights of the boys' putative fathers, who are not a part of this appeal.

argues that she had successfully worked her case plan and that none of the causes of removal were still present at the time of termination. The trial court found that, despite Robinson's significant efforts, she had not remedied the original factors causing removal because she had not maintained sobriety, maintained safe or appropriate housing, or demonstrated the capacity to protect or provide for the children. The court noted that she had completed many of the services DHS provided, but that she "still cannot safely care for her children." The court noted that she had exhibited only minimal to moderate improvement through DHS's mental health and counseling services. Robinson argues that she had remedied the specific conditions (drug use, lack of food and electricity, cohabitation with a sex offender) that caused the boys' removal and that the court could not consider her general capacity to care for the children in analyzing this statutory ground. We disagree.

Robinson's argument ignores the fact that, from the outset of this case, her severe mental and psychological impairments prevented her from caring for her children. In its termination order, the trial court noted that DHS had first been involved with Robinson's family through a protective-services case that preceded and led to the initiation of this dependency-neglect case. Prior to removing the children, DHS had provided Robinson with parenting classes, medication management services, counseling, and even an inpatient mental-health hospitalization. The trial court's termination order repeatedly notes that, despite her best efforts at rehabilitation, Robinson still cannot care for her children. This finding is related to the original reasons for removal, which highlighted specific manifestations of Robinson's inability to parent the boys. We hold that there was sufficient

SLIP OPINION

evidence to support the trial court's findings, and the court's inclusion of her underlying incapacity to care for her children was not clearly erroneous.

Robinson's second argument on appeal challenges the trial court's finding that there were other factors or issues that arose subsequent to the filing of the original petition that demonstrate that placement of the boys in Robinson's care is contrary to their health, safety, or welfare, and that despite the offer of appropriate family services, Robinson manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the circumstances that prevent the placement of the boys in her custody. The termination order stated that Robinson continued to get involved with inappropriate men during the case, had lost her only support system when her mother died, and had recently obtained an SSI disability finding based on mental-health issues that DHS had tried to address but had not been able to remedy. It is undisputed that a trial placement with Robinson ended when she violated court orders by having her boyfriend as an overnight guest, despite the fact that he refused to participate in the case plan and had previously had his parental rights terminated as to five children in California. Additionally, Robinson admitted that she was afraid to care for the children on her own, a problem made worse by the death of her mother, who had been her only support system. Finally, the trial court noted Robinson's recent SSI disability finding, stating that DHS had attempted to address the serious mental-health issues with every service available, but had not succeeded. As discussed above, we affirm the trial court's determination that Robinson's incapacity to care for her children was an underlying cause of their removal, but that finding does not prevent the trial court from also recognizing that the extent and severity of her mental-health problems only became apparent late in this case,

constituting a subsequent factor under the statute. We hold that there was sufficient evidence to support this statutory ground and that the court's finding was not clearly erroneous.

Robinson also argues that termination of her parental rights was not in the boys' best interest. She challenges the trial court's finding as to both adoptability and risk of potential harm if returned to her. As to adoptability, there was conflicting testimony, most of it indicating that the boys have severe behavioral and emotional problems and are not yet adoptable, but could become adoptable. The court found that the boys' best chance for permanency was to terminate Robinson's rights and allow them to heal from the emotional problems she had caused. We agree. Robinson's argument is, essentially, that her neglect, drug use, and inability to parent had caused her children to have such severe emotional and behavioral problems that they are not currently adoptable, so she should get them back. Such a ruling would be in clear derogation of our well-established case law regarding termination. "Parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. Thus, parental rights must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children." *McElroy v. Ark. Dep't. of Human Servs.*, 2014 Ark. App. 117, at 6, 432 S.W.3d 109, 113–14. Robinson seeks to benefit from the fact that she so traumatized her children that they may need additional services in order to be adopted. We reject this argument and affirm the trial court's finding that termination was in the boys' best interest even if adoption was not immediately available to them. We also affirm the court's finding that the boys faced a risk of potential harm if returned to Robinson's care. Given the fact that a trial placement

with Robinson failed, Robinson demonstrated an inability to care for the children, and she was unable to maintain stable housing, there was sufficient evidence to support the court's finding that returning the boys to Robinson's custody would pose a potential risk of harm. We hold that the trial court's determination that termination of Robinson's parental rights was in the best interest of her two sons was not clearly erroneous.

Affirmed.

HARRISON and HIXSON, JJ., agree.

*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit*, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.