

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–15–603

| | |
|---|---|
| MARKITA BELL<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | **Opinion Delivered** September 28, 2016<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. JV-2013-582]<br><br>HONORABLE LEIGH ZUERKER, JUDGE<br><br>AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant Markita Bell appeals the May 27, 2015 order of the Sebastian County Circuit Court that terminated her parental rights to her daughter LB, born in September 2013. Appellant does not contest the multiple statutory grounds that were found to support the termination of her parental rights. On appeal, she presents two points, arguing that (1) the trial court's finding that termination of parental rights was in LB's best interest is clearly erroneous; and (2) the trial court's decision to deny appellant's motion for a continuance constituted an abuse of discretion. We affirm.

First, we examine the chronology of events and the evidence presented to the trial court. On October 7, 2013, the Department of Human Services ("DHS") filed a petition for emergency custody of LB. DHS had received a referral from the hospital where LB was born. LB's date of birth is September 26, 2013. Appellant had not had prenatal care, and she tested

positive for THC at the time of giving birth. LB was a premature baby and had difficulty feeding. Despite instruction and assistance, appellant had not shown the ability to feed her baby independently, nor had she shown appropriate attentiveness to the baby's needs in order to take LB home. DHS noted in its affidavit that appellant herself had been in foster care for substantial periods of time during her minority and that appellant had other interactions with DHS regarding her older daughter AB. An ex parte order for emergency custody was granted.

A probable-cause hearing was conducted on October 8, 2013, wherein probable cause was found to keep LB in DHS custody.[1] Appellant was permitted to have two-hour supervised visits, three times per week, contingent on passing a drug screen. She was appointed an attorney.

Following an adjudication hearing in December 2013, LB was found to be dependent-neglected with appellant stipulating that she had put LB at significant risk of harm resulting from her inadequate supervision and drug use. Both her lack of prenatal care and her postnatal apathy in caring for LB were found to support a finding of dependency-neglect. A case plan was developed, and appellant was ordered to comply with DHS directives. Appellant was ordered to maintain stable and appropriate housing, income, and transportation;

---

[1]LB's putative father, Robert Sudds, was subsequently added to the case, but he did not participate. Sudds's parental rights were ultimately terminated, and he is not party to this appeal. Appellant's older daughter AB (born in July 2007) and AB's putative father, Quincy Johnson, were also subsequently added to the case. Johnson did not participate in the case. AB was found to be dependent-neglected. At the time of the termination of parental rights regarding LB, AB was in DHS's custody and her case remained open. AB and Johnson are not parties to this appeal.

complete parenting classes; complete a psychological evaluation and all recommended treatment; complete a drug-and-alcohol assessment and all recommended treatment; visit LB regularly; and cooperate with intensive family services.

The case was reviewed in February 2014. Appellant had tested positive for THC and opiates in January 2014 and for opiates in February 2014, she had not completed parenting classes, and she had refused DHS access to parts of her home. Appellant had complied with the case plan in other ways, including obtaining appropriate housing, completing a drug-and-alcohol assessment, completing a psychological evaluation, and visiting regularly. DHS was determined to have made reasonable efforts to provide services to achieve the goal of reunification with LB, and reunification remained the goal.

In August 2014, a permanency-planning hearing was conducted. The concurrent goals for LB were to reunify with her mother and to terminate parental rights and effect adoption. Appellant was deemed partially compliant. Appellant had not participated in family counseling as recommended, had not completed parenting classes, and had not visited LB regularly.

A fifteen-month permanency-planning hearing was conducted in November 2014. At this point, it was apparent that appellant's efforts toward reunifying with LB had waned. The goals remained the same, with the trial court remarking that appellant had moved five times during the pendency of this case and was currently living in a hotel, had failed to maintain contact with DHS, and had last visited LB on September 5, 2014. DHS was deemed to have provided reasonable efforts toward achieving reunification.

On January 29, 2015, DHS filed its petition to terminate appellant's parental rights to LB. DHS alleged several statutory grounds, acknowledging that LB had been outside of her mother's custody for well over a year. DHS's statutory grounds included (1) failure to remedy the causes of removal, despite meaningful effort by DHS to rehabilitate the parent and correct the conditions that caused removal; (2) willful failure to maintain meaningful contact with LB; (3) abandonment of LB; (4) subjection of LB to neglect or abuse that could endanger the life of the child; (5) manifestation of incapacity or indifference to remedying subsequent issues or factors that have arisen since the initial petition's filing; (6) subjection of LB to aggravated circumstances (namely, abandonment); and (7) subjection of LB to aggravated circumstances (namely, that there is little likelihood that services will result in reunification). Recitations of extensive specific facts followed each alleged statutory ground. Emphasis was placed on appellant initially showing a lack of ability or interest in caring for her baby; her repeated moves in residence; her having completely stopped visiting with LB after September 5, 2014, essentially abandoning LB; and her failure to achieve reunification after eighteen months of services being provided to her. The termination hearing was initially set to be heard on February 17, 2015, but it was continued to March 3, 2015.

On March 2, 2015, private attorney Frank W. Booth entered his appearance on behalf of appellant and asked that appellant's appointed attorney be relieved. On March 3, 2015, attorney Booth filed a motion for a continuance, asserting that he was hired on February 27, 2015, following appellant's having been advised by her appointed attorney that she should give up her parental rights. Booth requested a continuance of at least sixty days in order to

adequately prepare. The trial court granted a substantial continuance, setting the termination hearing for April 17, 2015.

On April 3, 2015, appellant filed a "Motion to Dismiss and Alternative Response to Petition for Termination of Parental Rights." The motion asserted that the dependency-neglect statutes and termination statutes were in violation of the United States and Arkansas Constitutions, that the petition to terminate lacked clear, concise factual allegations, and that the termination petition should not be granted because there was insufficient evidence to support it.

On April 9, 2015, appellant filed another motion for a continuance in which she contended that discovery had been propounded to DHS and responses filed, but that a motion to compel might be necessary, which affected her ability to be prepared for an April 17, 2015 termination hearing regarding LB and an adjudication hearing regarding AB, to be heard on the same date. The motion also asserted that appellant suffered from bipolar disorder; that DHS had not made reasonable accommodations for her under the Americans with Disabilities Act; and that DHS had failed to attempt placement of the children with relatives. The motion asked that a continuance be granted for at least sixty days following DHS's full compliance with appellant's discovery requests and that both LB and AB be placed with relatives and appropriate services be provided to appellant in the interim.

On April 14, 2015, DHS filed an amended petition to terminate parental rights regarding LB. The petition's allegations remained the same but the paragraphs were more clearly numbered and separated as to particular facts under each alleged ground.

On April 15, 2015, the children's attorney ad litem filed a response in opposition to any continuance, asserting that LB had been in foster care since she was discharged from the hospital after being born, that LB needed permanency, that appellant's recent claim of having bipolar disorder was without any evidence to support it nor were any accommodations requested due to such an alleged disorder, and that appellant had not visited LB for seven months. On April 16, 2015, appellant filed a reply to the attorney ad litem's response, restating her general complaints about her prior attorney, DHS, and the attorney ad litem in failing to work harder to reunify appellant with LB and preserve her constitutional rights to parent. Also on April 16, 2015, appellant filed a motion to dismiss the petitions and an amended motion for a continuance, asking that the matter be continued for no less than ninety days in order to have DHS comply with its duty to provide meaningful services and asking that LB and AB be placed with relatives during this continuance. The amended motion added that appellant should be given adequate time to prepare to respond to DHS's amended petition to terminate and to the amended petition for custody of AB.

A hearing was conducted on April 17, 2015. The trial court denied appellant's motions to dismiss the termination proceeding and then entertained appellant's recent request for a continuance. The trial court clarified that the only motions before the court at present would relate to LB, not AB.

Appellant's attorney acknowledged that the initial motion for a continuance was granted. As to the most recent request for a continuance, appellant's attorney stated that it was based on the lack of a reasonable period of time to review the amended petition to

terminate. DHS responded that it merely cleaned up some minor grammatical issues and clearly separated each factual allegation to accommodate appellant's complaint about the petition itself; there was no new information. Appellant's attorney agreed that "they are essentially the same." The trial court denied the motion to dismiss or in the alternative to continue the case because the original and amended petitions to terminate parental rights were the same but formatted differently, putting appellant on notice of DHS's allegations. Appellant raised other motions and evidentiary objections to the trial court, specifically a motion in limine regarding alleged hearsay and a motion to exclude DHS witnesses, which were discussed and ruled on by the trial court. The trial court acknowledged that all prior orders and pleadings were part of the record and that appropriate objections to particular evidence could be made during the course of the hearing.

The termination hearing proceeded. Appellant testified to her efforts to comply with DHS directives but agreed that she quit visiting LB in September 2014 despite knowing the visitation schedule and plan. Appellant admittedly had moved "about five times or so" since this DHS case started in October 2013. Appellant acknowledged a multitude of services that had been provided to her and that she had completed many, but she admitted that she had recently pleaded guilty to prostitution, shoplifting, and animal cruelty. Appellant claimed to suffer from bipolar disorder, but she had no evidence of such a diagnosis. She suffered from anxiety and underwent counseling provided by DHS where she learned coping techniques, but she was not medicated for this problem. Appellant was on Medicare. Appellant testified that there was no other service she could think of "right off the top of my head" for DHS to

provide to her in order to help with reunifying with LB, other than medication management. She agreed that "from time to time I use marijuana." Appellant was aware that LB wore hearing aids and that she received supportive services to help her developmentally. Appellant described LB as "slightly deaf." Appellant said that she was able to parent AB for years and that she should be allowed to parent LB.

The DHS caseworker testified to her experience with appellant initially trying to work her case plan but eventually ceasing her cooperation. The caseworker said that there were periods when she was unable to reach appellant; appellant was discharged from counseling for non-attendance; she stopped coming to visits with LB in early September 2014; and appellant expressed concern over testing positive for THC as a reason she quit coming to visit. She testified about appellant's complaints of anxiety and said that she took steps to assist her in determining her Medicare number, providing appellant several sheets listing psychiatrists or doctors who could help and who she could call. The caseworker said that after eighteen months on this case, there were no other services that had not already been provided to appellant that would assist her and that it was unlikely that provision of any more services would result in a successful reunification.

The case worker testified that LB was adoptable and would be subjected to potential harm if returned to her mother, stating in part,

> Despite having some problems she's still fairly healthy. I don't see any reason why she wouldn't be adoptable. Her age is a factor in my evaluation of how adoptable she is, she's young. In my experience is that sort of helps the adoption process with younger children. I believe that returning LB to Markita Bell [or the putative father], there would be potential harm that she would be subjected to if that were to happen. Markita has not seen her in about eight months. There's not the bond. Before

Markita stopped coming to visitations that I observed I still had concerns for her ability to take care of her. LB does need special care with feedings, and burpings, and swallowing correctly. I do not believe Markita Bell could care for her in the way that's necessary.

. . .

The progress of this case was going pretty well until she stopped visiting.

. . .

As I said, the child is adoptable. I do not know the statistics of how many children there are up for adoption in Arkansas at the present time. I don't have any idea. Her being cute isn't the only reason I say she's adoptable. She's young and despite a few issues with her being a premature baby that has still continued and the hearing problems and being in BOST and needing therapies, she's still a happy young girl, and there is not a reason that she could not be adopted.

. . .

My opinion is based on my experience of other kids in the two years that I've been a Case Worker is that the cases have been terminated on and then the kids getting adopted when they were around the same age.

. . .

My basis for saying that Markita could not take care of her child, well, I'm going to start with not visiting for approximately eight months. Not going to the doctor visits that she was invited to for LB; getting arrested for Animal Cruelty and Prostitution, continued drug use, not showing stability in housing.

. . .

So if you're constantly moving around that's not showing stability.

. . .

With regard to LB's adoptability, her current placement has expressed some interest to me. I've seen children about her age and not quite as many special needs be adopted, yes. Her age weighs heavily in her favor.

The caseworker clarified that appellant had been invited to attend LB's test of her capacity to swallow, with which LB had issues, and appellant did not attend, which would affect her ability to raise LB. She also testified that appellant had missed fifty-eight visits before September 2014 and all visits thereafter. She also clarified that LB still required occupational, physical, play, and speech therapy, as well as hearing aids that required regular appointments.

At the conclusion of the presentations, the trial court entertained arguments, took a recess to consider the case, and then announced its decision to terminate parental rights to LB.

9

In doing so, the trial judge recited the history of the case since it was opened in October 2013, all the hearings and findings of those hearings, and listed all the services provided by DHS and those that appellant used. The trial court found compelling the facts that appellant failed to obtain prenatal care and tested positive for drugs at the child's birth indicating prenatal ingestion of drugs; that appellant lacked stable housing and moved five times in the previous eighteen months; that appellant missed fifty-eight visits prior to September 2014 and attended no visits thereafter; that appellant had three recent arrests on criminal charges; that appellant had positive drug screens and failed to complete counseling that DHS provided; that appellant willfully failed to maintain contact with LB and had abandoned her; and that there was little likelihood that any further services would result in successful reunification in a reasonable period of time.

A formal, detailed, thirteen-page order followed explaining the trial court's reasoning for finding clear and convincing evidence of multiple statutory grounds and that it was in the child's best interest to terminate parental rights, specifically stating that the court had considered the juvenile's need for permanency, the likelihood that the juvenile will be adopted if the termination petition is granted, and the potential harm to the juvenile that would be caused by returning the juvenile to either parent. The trial court's order recited that, as to adoptability, the court considered the caseworker's testimony, the caseworker's experience, and LB having some special needs that would not prevent her from being adopted. The trial court's order stated that LB would be subjected to potential harm if returned to appellant based on the significant risks associated with appellant's abandonment

of the child, her noncompliance in this case, and her failure to meet her own needs, much less the special needs of LB. Appellant timely appealed the order terminating her parental rights.

Our court reviews termination-of-parental-rights cases de novo. *Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, 451 S.W.3d 231. An order terminating parental rights must be based on clear and convincing evidence. *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). Clear and convincing evidence is that degree of proof that will produce in the finder of fact a firm conviction as to the allegation sought to be established. *Spangler v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 404. The inquiry on appeal is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Harbin*, *supra*. We do, however, give a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *Taffner v. Ark. Dep't of Human Servs.*, 2016 Ark. 231; *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

To terminate parental rights, there must be clear and convincing evidence of at least one of the alleged statutory grounds as well as a finding that termination is in the child's best interest, which requires that the trial court consider the likelihood that the child will be adopted and the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A) (Repl. 2015). In considering the best interest of the child, there is no requirement that every factor considered be established by clear and convincing

evidence; rather, after consideration of all factors, the evidence must be clear and convincing that termination is in the best interest of the child. *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, 435 S.W.3d 495. Adoptability is but one factor that is considered when making a best-interest determination. *Id.* When considering potential harm, this is viewed broadly and in a forward-looking manner, and there is no requirement that an actual harm be identified or proved. *Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001). Admitted failure to comply with court orders can suffice as indicating a potential harm. *B.H.1 v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 532. The intent of the termination of parental rights statute is "to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's heath, safety, or welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective." Ark. Code Ann. § 9-27-340(a)(3).

With these legal parameters, we examine appellant's first point on appeal. Appellant concedes that there is clear and convincing evidence to support at least one of the statutory grounds in support of terminating her parental rights. Instead, appellant argues that the finding that termination was in LB's best interest is clearly erroneous. More specifically, appellant argues that the evidence before the trial court regarding (1) the likelihood that LB would be adopted, and (2) the potential of harm if LB were returned to her mother was insufficient to conclude that the best-interest threshold was met.

Appellant asserts that this caseworker's testimony was too generic, meaning that she

relied on her overall professional opinion that young children like LB are adoptable. Appellant likens her situation to the facts of *Grant v. Arkansas Department of Human Services*, 2010 Ark. App. 636, 378 S.W.3d 227, where our court reversed on the issue of consideration of adoptability. In *Grant*, the adoption specialist opined that the child at issue was adoptable even with a recent diagnosis of autism because she believed that all children are adoptable. The present case is distinguishable. The case worker did rely on her professional experience, but she also testified to LB's particular characteristics, her youth being a distinct advantage, and, importantly, that LB's current placement had expressed interest in adopting her. *Compare Miller v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 239, 492 S.W.3d 113 (trial court had considered likelihood that one child would be adopted and affirmed best interest finding; the opinion examined other cases where no evidence whatsoever on adoptability was presented and required reversal); *Threadgill v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 642, 386 S.W.3d 543 (trial court had considered likelihood of adoption where a family member expressed interest in adopting the children). We hold that the trial court's consideration of the likelihood of LB's being adopted was underpinned by adequate evidence.

Appellant presents a secondary argument regarding "best interest." She contends that there was insufficient evidence of potential harm to LB for the trial court to conclude that termination was in this child's best interest. When considering potential harm, this is viewed broadly and in a forward-looking manner, and there is no requirement that an actual harm be identified or proved. *Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001). Appellant acknowledges the parameters of the potential harm analysis but argues that

13

this factor was woefully unsupported, even though she concedes that "the last eight months of the eighteen month long case were not productive for her and that her actions did not inspire confidence in her ability to adequately parent LB." Appellant concedes that she stopped visiting LB for months, she tested positive for drugs, she was arrested on a variety of criminal charges, and she suffered from anxiety issues. Appellant concedes that there is sufficient evidence to support at least one of the grounds for termination. While appellant accuses DHS of not adequately helping her with her anxiety issues, the trial court had found that DHS had provided reasonable efforts throughout this case, and reasonable efforts are typically associated with statutory grounds and not the best interest of the child. The evidence that supported statutory grounds is also supportive of the potential harm to LB if returned to her mother's custody. Continued uncertainty is itself potentially harmful to children. *Brumley v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 90, at 14, 455 S.W.3d 347, 356. The risk for potential harm is but a factor for the court to consider in its analysis. *Drake v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 475, 442 S.W.3d 5; *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark. App. 255, 148 S.W.3d 780 (2004). The trial court's explanation of the potential harm to LB if returned to her mother's custody–the risks associated with her abandonment of LB and her inability to care for her own needs– is clearly sufficient to demonstrate consideration of this factor. Appellant does not demonstrate reversible error in her first point on appeal.

Appellant's second point on appeal is that the trial court erred in denying her motion for a continuance. We disagree. The denial of a motion for continuance is within the discretion of the trial court. *Rodriquez v. State*, 299 Ark. 421, 773 S.W.2d 821 (1989). In

14

SLIP OPINION

order to show abuse of discretion, an appellant must show that he was prejudiced. *David v. State*, 295 Ark. 131, 748 S.W.2d 117 (1988). Where the lack of preparation time for counsel is a primary basis for requesting a continuance, this court considers the totality of the circumstances. *Gonzales v. State*, 303 Ark. 537, 540, 798 S.W.2d 101, 102 (1990); *Swaim v. State*, 257 Ark. 166, 514 S.W.2d 706 (1974). A motion for continuance shall be granted only upon a showing of good cause. *Cotton v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 455, 422 S.W.3d 130. We will not reverse the denial of a motion for continuance absent an abuse of discretion that amounts to a denial of justice. *Id.* A circuit court abuses its discretion when it acts improvidently and without due consideration. *Id.*

Appellant argues that although her new attorney initially obtained a continuance, the trial court abused its discretion in not granting her second motion for continuance for sixty days, following extensive discovery requests propounded to DHS and following DHS preparing an amended petition to terminate parental rights. Appellant cannot demonstrate an abuse of discretion or resulting prejudice.

Our court has upheld rulings that denied continuances in other termination-of-parental-rights appeals, holding that there was no showing of an abuse of discretion or resulting prejudice. In *Cotton v. Arkansas Department of Human Services*, 2012 Ark. App. 455, 422 S.W.3d 130, a newly appointed attorney on a termination case asked for more time to prepare. The attorney had been appointed two months prior to the hearing, but counsel waited until the day of the hearing to make an oral motion for a continuance, based partly on lack of preparedness. Our court determined that there was a lack of diligence, and there was

15

no detailed amplification of how additional time would have helped Cotton, supporting the trial court's denial of the motion for continuance. *See also Mosher v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 111, at 6, 455 S.W.3d 367, 371 (no-merit appeal upholding denial of motion for continuance filed mere days prior to termination hearing).

Here, the initial petition to terminate parental rights was filed January 29, 2015; appellant hired her new attorney February 27; the trial court granted an initial motion for continuance moving the hearing from March 3 to April 17; appellant sent discovery to DHS that was answered; appellant filed motions to dismiss that were denied; appellant filed an amended motion for a second continuance days prior to the termination hearing; and on the April 17 hearing date, appellant asked for at least sixty more days. Appellant's assertions did not provide good cause to grant another continuance. Much of the discovery about which appellant complains related to AB, not LB, who is not a party to this appeal, and much of the discovery sought was already in the trial court record from prior hearings and orders, readily available to appellant. Moreover, there was no outstanding motion to compel, and appellant failed to explain to the trial court how a continuance would have made a difference in the outcome of this case. As to appellant's complaint that she was entitled to more time to prepare for the amended petition to terminate parental rights, we reject this argument because appellant's attorney conceded that the amendment was exactly the same content and contained the same allegations. DHS merely clarified some grammatical points and set out each paragraph more distinctly. In short, appellant cannot demonstrate an abuse of discretion that amounts to a denial of justice in the denial of another continuance.

16



We affirm.

GRUBER and WHITEAKER, JJ., agree.

*Leah Lanford*, Ark. Pub. Defender Comm'n, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor child.