PHILLIP T. WHITEAKER, Judge
Misty Gonzalez appeals the decision of the Poinsett County Circuit Court terminating her parental rights to her three children: S.A. (born July 13, 2002), R.G. (born November 16, 2007), and L.G. (born December 8, 2009). On appeal, Gonzalez argues that the circuit court erred in finding that the Arkansas Department of Human Services (DHS) proved the statutory grounds necessary for terminating her parental rights; additionally, she argues that the circuit court erred in finding that termination was in the children's best interest. We affirm.
*917 I. Procedural History
DHS has an extensive history with Gonzalez and her family. In February 2015, DHS investigated unsubstantiated allegations of physical abuse made against Gonzalez's husband, Richard Gonzalez.[1] In December 2015, DHS investigated substantiated allegations of cuts, welts, bruises, striking a child, threat of harm, failure to protect, and environmental neglect, and it opened a protective-services case at that time.
In March 2016, DHS investigated a hotline report of substance misuse, failure to protect, environmental neglect, and medical neglect. DHS contacted Gonzalez, who initially resisted a drug screen but ultimately tested positive for methamphetamine, amphetamine, THC, and MDMA. In addition, her home was piled with clothing; there were holes in the floor, a dog and its feces in a kennel in the bedroom, and the odor of marijuana in the home. DHS exercised a seventy-two-hour hold on the children and filed a petition for emergency custody and dependency-neglect.
The circuit court adjudicated the children dependent-neglected on May 26, 2016, finding that they were subjected to parental unfitness as a result of Gonzalez's drug use. The court established the goal of the case as reunification, with a concurrent goal of relative placement, permanency, and adoption. Gonzalez was ordered, among other things, to cooperate with DHS, comply with the case plan, and obey all orders of the court; remain drug free and submit to random drug screens; participate in and complete parenting classes; obtain and maintain clean, safe, and stable housing; obtain and maintain stable employment or provide sufficient income to support the family; and provide DHS with a budget indicating sufficient income or resources to meet the family's needs.
After adjudication, the court held review hearings in September and December 2016. At both review hearings, the court found that return of the children to Gonzalez's custody was contrary to the children's welfare and that DHS had made reasonable efforts to provide family services. The court also found that Gonzalez had complied with some aspects of the case plan, noting that she had remained drug free and had completed a drug-and-alcohol assessment. Nonetheless, the circuit court ultimately found that Gonzalez had still not obtained and maintained stable housing or employment, nor had she cooperated with DHS and complied with the case plan and court orders.
Despite these findings, in June 2017, the court authorized a trial home placement with Gonzalez. This arrangement was short-lived, however. By the time of the fifteen-month review hearing in September 2017, the circuit court determined that the goal of the case should be adoption. Specifically, the court found that Gonzalez had partially complied with the case plan by remaining drug free and completing outpatient therapy, but she still had not obtained stable housing, employment, or transportation. The court once more ordered Gonzalez to achieve these things and authorized DHS to file a petition for termination of parental rights.
DHS filed its termination petition in October 2017, alleging two grounds: (1) the "subsequent factors" ground in Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(a) (Supp. 2017), and (2) the "aggravated circumstances" ground in section 9-27-341(b)(e)(B)(ix)(a) . For the subsequent-factors ground, DHS alleged that since the original petition was filed in *918 March 2016, Gonzalez had been jobless, did not have stable transportation, and had a failed trial home placement, which ended when Gonzalez became homeless. In support of the aggravated-circumstances ground, DHS alleged that there was little likelihood that additional services to the family would result in successful reunification, pointing to the numerous services provided to Gonzalez throughout the case, her inability to have the stability of housing, employment, or transportation necessary to care for her children, and her noncompliance with court orders.
After a hearing on the petition in December 2017, the circuit court entered an order terminating Gonzalez's parental rights, finding that DHS had proved both statutory grounds and that the termination was in the best interest of the children. Gonzalez timely appealed the circuit court's order. She challenges the circuit court's finding that DHS proved both statutory grounds alleged in the termination petition; additionally, she challenges the potential-harm prong of the circuit court's best-interest finding. She does not specifically challenge the circuit court's findings regarding the adoptability of the children.
II. Standard of Review
On appeal, we review termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. Dade v. Ark. Dep't of HumanServs. , 2016 Ark. App. 443, 503 S.W.3d 96. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations. Jackson v. Ark. Dep't of Human Servs. , 2016 Ark. App. 440, 503 S.W.3d 122.
Our case law recognizes that the termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. Fox v. Ark. Dep't of Human Servs. , 2014 Ark. App. 666, 448 S.W.3d 735. In termination-of-parental-rights matters, the circuit court is required to follow a two-step process by finding first that the parent is unfit and second that termination is in the best interest of the child. T.J. v. Ark. Dep't of Human Servs. , 329 Ark. 243, 947 S.W.2d 761 (1997) ; Smith v. Ark. Dep't of Human Servs. , 2013 Ark. App. 753, 431 S.W.3d 364. The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The second step requires consideration of whether the termination of parental rights is in the children's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A). As a result, DHS bears a heavy burden in seeking to terminate the relationship of parent and child. Fox, supra.
III. Statutory Grounds
In her first point on appeal, Gonzalez contends that the circuit court erred in determining that DHS offered sufficient proof on the subsequent-factors ground. The subsequent-factors ground is set forth in Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)(a) . This statute provides that termination may be had on a finding that
other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate *919 family services , the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.
(Emphasis added.) Gonzalez asserts that this ground "has a specific services element that requires DHS to offer proof that it provided appropriate services to assist the parent in remedying the issues that arose subsequent to the filing of the original petition." She maintains that DHS failed to prove that it provided appropriate services, and therefore, the circuit court erred in finding sufficient proof in support of this ground.
The circuit court found that DHS had proved the subsequent-factors ground, determining that issues of homelessness, lack of employment, and lack of transportation arose subsequent to the filing of the petition. Specifically, the court found that Gonzalez had been homeless, jobless, and without transportation after the original petition had been filed in March 2016, despite court orders for services. The court concluded that DHS had provided appropriate family services to Gonzalez and that she manifested the incapacity or indifference to remedy the subsequent issues or factors, despite DHS's provision of services to meet these issues.
Gonzalez argues that she complied with the court's orders to obtain housing, employment, and transportation. She points to her testimony that at the time of the termination hearing, she was living in a one-bedroom apartment, was employed, and had a van for purposes of transportation. She complains that she did all of these things without DHS's assistance and that the court erred in finding to the contrary. We disagree.
The court heard testimony that DHS had provided services to Gonzalez to help remedy the issues of housing, employment, and transportation, including, among other things, gas cards, transportation for the children and parents, medical care for the children, foster-care placement for the children, and monthly home visits. Despite these services, Gonzalez was unable to remedy these issues.
With respect to her housing issues, Gonzalez stayed with friends and boyfriends from the onset of the case and never had proof of her own housing until the last minute. Gonzalez had obtained housing when the children were put in the trial home placement, but the house belonged to Gonzalez's boyfriend, and when they broke up, Gonzalez became homeless again. After the trial placement ended and the children were taken back into care, Gonzalez was admittedly accepted into a one-bedroom Housing and Urban Development (HUD) apartment, but this was in November 2017-right before the termination hearing. The court also heard testimony that there was no food in the home, no furniture in the home other than a blow-up mattress, and that the home was "not suitable" for the children.
Concerning employment and income, Gonzalez acknowledged that she had been without a job for almost two years before termination, despite the longstanding court order for her to obtain and maintain employment. Gonzalez did gain employment the month before the hearing, but she provided DHS with only one pay stub. Moreover, Gonzalez's schedule had her working from around six or seven p.m. until two a.m. each night, and she did not have anyone-or at least did not provide any information about anyone-who would watch the children at night.
Finally, with respect to Gonzalez's transportation, she reported having obtained a van within the last month before termination. However, although she testified *920 that she owned the van and had insurance on it, she offered no documentary evidence to support her assertion.
We cannot conclude that the circuit court's findings are clearly erroneous. In the instant case, there was ample evidence of Gonzalez's instability throughout the proceedings. There was also testimony that there were no other services that DHS could provide to Gonzalez that would resolve her issues. The circuit court did not clearly err in finding that the services provided by DHS-transportation, visitation, case management, and home visits-had not resolved the underlying problem of Gonzalez's instability.
In reaching this conclusion, we recognize Gonzalez's argument that the only outstanding issues noted by DHS concerning her remedying the subsequent factors were her lack of furniture and a concern about her ability to provide food. Because DHS "did nothing to address the sole outstanding concern of furniture by either offering cash assistance or assistance in finding donations for furniture," she contends that DHS failed to offer appropriate services to address the remaining issue of furniture.
We disagree that the "sole outstanding concern" was Gonzalez's lack of furniture. The circuit court expressly found that Gonzalez's most significant problem was her lack of stability throughout the case and her inability, until the last moment, to obtain housing, employment, and transportation, despite being ordered to do so throughout the duration of the case. This court has held, with respect to the subsequent-factors ground, that a parent's failure to comply with court orders can serve as a subsequent factor upon which termination can be based. Brown v. Ark. Dep't of Human Servs. , 2018 Ark. App. 104, at 14, 542 S.W.3d 899, 907 (citing Miller v. Ark. Dep't of Human Servs. , 2017 Ark. App. 396, 525 S.W.3d 48 ). In Brown , the parent had been ordered to obtain and maintain stable housing and employment but failed to do so. This court held that this failure was a sufficient factual basis for the circuit court's findings on the subsequent-factors ground.
Likewise, in Garlington v. Arkansas Department of Human Services , 2018 Ark. App. 124, 542 S.W.3d 917, we held that the mother's last-minute attempts at compliance with the court's orders were insufficient to avoid termination, even though she had made improvements in her attempts to find housing, because she was still unable to have her children safely returned to her by the time of the termination hearing.[2] There, we wrote as follows:
In Trout v. Arkansas Department of Human Services , 84 Ark. App. 446, 146 S.W.3d 895 (2004), we affirmed the circuit court's termination of the parental rights of a mother because she had not been stable for a sufficient amount of time to indicate reunification was possible. We held that to give the mother more time to comply would only ignore the fact that she had consistently failed to comply with the court's order. Id. In Camarillo-Cox v. Arkansas Department of Human Services , 360 Ark. 340, 201 S.W.3d 391 (2005), our supreme court affirmed a circuit court's termination although the mother had shown significant improvement and had eventually met nearly all the case-plan requirements, because those improvements were not made until the "eleventh hour" of the case. "[E]vidence that a parent begins to *921 make improvement as termination becomes more imminent will not outweigh other evidence demonstrating a failure to comply and to remedy the situation that caused the children to be removed in the first place." Id. at 355, 201 S.W.3d at 401.
Garlington , 2018 Ark. App. 124, at 8, 542 S.W.3d at 921.
Finally, in Tatum v. Arkansas Department of Human Services , 2017 Ark. App. 674, 536 S.W.3d 178, we affirmed the termination of a mother's parental rights on the subsequent-factors ground, despite her argument that DHS had not provided appropriate family services to her. Evidence in that case demonstrated that DHS had provided the mother with a psychological evaluation, two drug-and-alcohol assessments, transportation, a housing referral, and a financial-assistance referral. Despite those services, the mother had not complied with the court's orders to maintain stability in her housing, employment, and transportation. In affirming the termination, this court held that "there can be no meritorious challenge to the subsequent-factors ground when there was evidence of appellant's lack of compliance with the case plan and court orders." Id. at 6, 536 S.W.3d at 182.
We agree with the circuit court that Gonzalez complied with the case plan only at the last minute. This court has repeatedly held that the children's "need for permanency and stability will override [a parent's] eleventh-hour efforts." Burleson v. Ark. Dep't of Human Servs. , 2017 Ark. App. 616, at 8, 535 S.W.3d 655, 659 ; see also Sharks v. Ark. Dep't of Human Servs. , 2016 Ark. App. 435, at 13, 502 S.W.3d 569, 578 (noting that while there was evidence that parent was complying with the case plan, the court did not have to ignore that his compliance did not begin until the eleventh hour). We therefore conclude the circuit court correctly found that DHS proved the subsequent-factors ground. We can affirm termination when only one ground has been proved, see, e.g. , Lowery v. Ark. Dep't of Human Servs. , 2012 Ark. App. 478, 2012 WL 4009601 ; therefore, we affirm on this point.
IV. Best Interest
In her second point on appeal, Gonzalez challenges the circuit court's finding that termination was in the children's best interest. She does not challenge the court's adoptability finding, however, so we address only the potential-harm prong of this finding.
In considering potential harm caused by returning the child to the parent, the circuit court is not required to find that actual harm would result or affirmatively identify a potential harm. Gulley v. Ark. Dep't of Human Servs. , 2016 Ark. App. 367, 498 S.W.3d 754 ; Welch v. Ark. Dep't of Human Servs. , 2010 Ark. App. 798, 378 S.W.3d 290. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability the child receives in a permanent home. McNeer v. Ark. Dep't of Human Servs. , 2017 Ark. App. 512, 529 S.W.3d 269 ; Collins v. Ark. Dep't of Human Servs. , 2013 Ark. App. 90, 2013 WL 546940.
On this issue, as noted above, the circuit court found that Gonzalez's persistent lack of stability was indicative of the risk of potential harm. We agree. We have noted that a court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. See Furnish v. Ark. Dep't of Human Servs. , 2017 Ark. App. 511, at 14, 529 S.W.3d 684, 692. We have also held that a parent's failure to comply with court orders itself is sufficient evidence of *922 potential harm, see Bell v. Ark. Dep't of Human Servs. , 2016 Ark. App. 446, at 12, 503 S.W.3d 112, 119, and that a failed trial home placement may be considered evidence of potential harm. See Robinson v. Ark. Dep't of Human Servs. , 2016 Ark. App. 53, at 7, 481 S.W.3d 474, 479.
Each of these considerations was present in this case. As to Gonzalez's past behavior, she admitted that she was unemployed for years before termination, and she had not been able to maintain stable housing throughout the case. She failed to comply with the case plan until the last minute, and the trial home placement failed because of her inability to provide her children with a safe and stable place to live. We therefore cannot say that the circuit court's potential-harm finding was clearly erroneous.
Affirmed.
Gruber, C.J., and Brown, J., agree.

The circuit court also terminated Richard Gonzalez's parental rights in this case, but he did not appeal and is not a party to the present appeal.

Garlington involved the twelve-month failure to remedy ground, see Ark. Code Ann. § 9-27-341(b)(3)(b)(i)(a) , rather than the subsequent-factors ground, but in that case as here, the mother argued that DHS failed to provide appropriate family services.