Cite as 2022 Ark. App. 301

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-22-93

| | | |
|---|---|---|
| CARLA JOHNSON | | Opinion Delivered August 31, 2022 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION [NO. 60JV-20-41] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | | HONORABLE TJUANA C. BYRD, JUDGE |
| | APPELLEES | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Carla Johnson appeals from the order of the Pulaski County Circuit Court terminating her parental rights to her nine children. On appeal, Johnson argues that there was insufficient evidence that termination is in the children's best interest. We affirm.

The Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect in January 2020 alleging that Johnson's children were at substantial risk of serious harm as a result of environmental neglect, medical neglect, educational neglect, sexual abuse, and parental unfitness. Johnson's children ranged in age

from six months to fourteen years old. The family[1] had a long history of maltreatment investigations and protective-services cases. In January 2020, authorities found the home to be in unacceptable condition with the floors cluttered with food and trash and no beds for the toddlers. The children were dirty. The youngest children had missed doctor appointments, and the oldest child had been dropped from school for too many absences. A three-year-old child appeared to have cigarette burns. DHS set up medical appointments and appointments for forensic interviews, but Johnson failed to take the children to their appointments. After DHS took the children to their appointments, the forensic interviews of the four oldest children revealed allegations of domestic violence, drug use, and sexual abuse that the parents failed to believe. One child reported witnessing her sister being raped. Prior to the adjudication hearing, all the children tested positive on hair drug screens for methamphetamine, amphetamine, cocaine, and THC.

The children were adjudicated dependent-neglected, and reunification was made the goal of the case. At a June 2020 permanency-planning hearing, the court found that Johnson had made some effort to comply with court orders, but it remained to be seen whether there had been any progress toward reunification. At that time, Johnson was homeless, had missed four appointments for her drug-and-alcohol assessment, had missed two parenting classes and been dropped from the course, had tested positive for drugs on a nail test, and had submitted to her psychological evaluation after missing the first two appointments. At an

---

[1]The family included Cornelius Cunningham, Johnson's boyfriend and the father to some of the children, whose rights were also terminated in this case.

October 2020 hearing, the court again noted some effort to comply but could not see any progress being made. Johnson had completed her drug-and-alcohol assessment, but she did not want to attend the recommended residential drug treatment. She was attending therapy, living in a hotel, and was unemployed.

Johnson suffered a stroke in November 2020 and was hospitalized for about a month. At a January 2021 review hearing, the court found that on the basis of the recommendations of CASA, the attorney ad litem, and DHS, the goal would remain reunification, in part because of issues caused due to turnover within DHS. However, the court noted that Johnson had not made much progress prior to her hospitalization. When the case was reviewed in May 2021, the court changed the goal to termination of parental rights. The only progress Johnson had made since the prior hearing was entering inpatient drug treatment.

The termination hearing was held in September 2021, at which point the children had been in foster care for 618 days. Johnson tested positive for THC a few days after leaving inpatient drug treatment in May. Despite requests, she had failed to provide verification of housing, employment, NA attendance, or consistent counseling attendance. Testimony established that Johnson had failed to complete parenting classes and twice failed to appear for her therapy intake appointment. She did, however, participate in a parenting support group and attend four therapy sessions with Our House. Her psychological evaluation revealed that her capacity for independent care of the children was "marginal at best."

Johnson testified that she did not go to her therapy intake appointment because she thought therapy through Our House would be better. She had not had formal therapy sessions since June, but she still spoke to her therapist. Johnson testified that she had not started NA despite the court's order to submit sign-in sheets, but she did have a sponsor with whom she was in contact. She was currently living in a hotel, but she said that she was about to move into a two-bedroom home after repairs were finished. She had been employed for nearly two months babysitting and made four hundred dollars a week. She said that she had been taking medication for depression and anxiety since June. There had been seven different caseworkers on her case in the first year, which Johnson said had led to problems getting in touch with them and figuring out what needed to be done. She said that she could not do everything she needed to do and take care of her health. There was testimony that the children's needs were being addressed and that they are adoptable. Some of the children suffered from emotional issues, a number were in trauma-focused counseling, and the younger children were in speech, occupational, and physical therapy.

The circuit court terminated Johnson's parental rights upon finding that DHS had proved the statutory grounds of failure to remedy and aggravated circumstances and that termination was in the children's best interest. The court found that Johnson had failed to engage in services and benefit from them.

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2021). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a

4

firm conviction as to the allegation sought to be established. *Baker v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 507. The appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*

In order to terminate parental rights, a circuit court must find clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). The circuit court must also find by clear and convincing evidence that termination is in the best interest of the child, taking into consideration (1) the likelihood that the child will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

In considering potential harm caused by returning the child to the parent, the circuit court is not required to find that actual harm would result or affirmatively identify a potential harm. *Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability the child receives in a permanent home. *Id.* We

have noted that a court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Id.*

Johnson argues that DHS failed to prove by clear and convincing evidence that it was in the children's best interest to terminate her parental rights. She does not challenge the evidence that the children are adoptable; instead, she claims that there is no substantial risk of potential harm in returning the children to her care because she is complying with the case plan and benefiting from services. Johnson argues that she is employed, has housing lined up, completed drug treatment, remained drug-free after treatment but for a single marijuana screen, and is participating in parenting classes and counseling. She faults DHS for not referring her for assistance with housing or medication management.

Johnson also claims that the "only known referrals began almost one year after the children were brought into foster care." However, that is completely contrary to the evidence. For example, there was testimony that during the first year of the case, Johnson missed appointments for her drug-and-alcohol assessment on April 21, May 5, May 20, and July 15, 2020, before finally completing it in August 2020; she had a psychological evaluation in May 2020; she was referred to inpatient rehab but did not attend; and she was referred to parenting classes but was dropped for nonattendance. Accordingly, there were referrals made, but Johnson did not take advantage of the offered services in the first year of the case. There were certainly issues caused by the fact that there were seven different caseworkers in the first year, and Johnson's hospitalization was a setback. However, the court addressed these issues in part by keeping the goal as reunification despite little progress. Furthermore,

Johnson's claims that she is "actively" engaged in counseling and parenting classes are belied by the testimony of Kelsie Hammons, a social worker and therapist at Our House. Hammons testified that Johnson participated in a parenting support group and four therapy sessions in June 2021. Although Hammons had stayed in contact with Johnson since then, Johnson had not had any more formal sessions.

The circuit court found that if the children were returned, there would be potential harm, including neglect, potential drug exposure, and possible homelessness. Despite the case being open for more than twenty months, Johnson had not completed counseling or parenting classes, had not attended NA, and had not maintained stable housing and income. As the court indicated, if Johnson could not handle the requirements of the case when the children were not with her, it was doubtful that she could handle nine children with various special needs and treatments. In light of Johnson's failure to comply with the case plan and show stability in her life, the circuit court's findings were not clearly erroneous.

Affirmed.

BARRETT and HIXSON, JJ., agree.

*Dusti Standridge*, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.